[No. B080459. Second Dist., Div. Six. Feb. 22, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM THOMAS WHITE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

## COUNSEL

Kent D. Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Sanjay T. Kumar and Carol Ann Greenwald, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, J.**—William Thomas White appeals from the judgment (order committing him to the Department of Mental Health) entered following a jury trial at which it was found that he was a mentally disordered offender (MDO) (Pen. Code, § 2962). One of his contentions is that no evidence was presented that the person in charge of treatment evaluated appellant. [[/]]* We reject his contentions and affirm.

The record reflects that, in 1990, White was sentenced to six years in prison after he was convicted of assault with a deadly weapon in which he inflicted great bodily injury. The assault occurred while he was in a clinic for a psychological evaluation and attacked a doctor. On June 6, 1993, the

---

*See footnote, *ante*, page 638.

Board of Prison Terms (BPT) determined that White was an MDO and he was committed to Atascadero State Hospital for treatment as a condition of his parole.

White petitioned for a hearing, pursuant to Penal Code section 2966, to determine whether he came within the MDO criteria at the time of the BPT hearing. At the section 2966 hearing Doctor Fred Cutter, a psychologist, and Doctor Philip Kelly, a psychiatrist, testified that they were of the opinion that White met the MDO criteria. Doctor Cutter testified that, in reaching his opinion, he had relied on the reports of Doctor John Kinkaid, Doctor D. L. Pickens, and Doctor Joseph Allioto, all of whom had agreed that White met the MDO criteria.

On cross-examination, White's counsel questioned both testifying doctors as to whether they knew who had been in charge of White's treatment. When Doctor Cutter was asked if Doctor Pickens was the person in charge, Cutter responded, "No." On redirect, Doctor Cutter was asked which doctor was in charge of all the other doctors and indicated that it was Doctor Zil and that all of the other doctors worked at Doctor Zil's direction. On cross-examination, Doctor Kelly said Doctor Kinkaid was not the person in charge of treating White and that he did not think Doctor Pickens was either, but did not know. Doctor Kelly said that Doctor Zil was the person ultimately responsible for the treatment of all patients. Doctor Kelly presumed Doctor Zil, who was the chief psychiatrist for the Department of Corrections, delegated the treatment to others.

In defense, White claimed that the attack on the doctor in the clinic was the only time he had ever attacked another person and said he didn't think he would do it again. He admitted that in the past he had set a squirrel on fire. He didn't think he should have to take medications all the time. White also said that the doctors could cause illness by "crawling inside somebody's body and stuff like that . . . . [T]hey do crawl inside of people, use instruments of incest and stuff like that." He did not know the name of the person who had been in charge of his treatment.

Over White's objection that some of the documents were hearsay or did not qualify as business or governmental records "because they are not the report of an act, event or omission," the complete certification packet which had been presented at the BPT hearing was admitted into evidence. The packet contained the reports of Doctor Kinkaid, a psychologist with the Department of Mental Health, and Doctor Pickens, a psychologist at the California Medical Facility, who had evaluated White prior to the BPT hearing, White's probation report, and other information regarding him.

Doctor Zil, the chief psychiatrist, had certified that White met the MDO criteria.

[[/]]*

I. *Sufficiency of Evidence/Person in Charge of Treatment*

■ White contends there was insufficient evidence to establish he was evaluated by the person in charge of his treatment and, therefore, reversal is required. We disagree.

Section 2962 of the Penal Code provides, in pertinent part, for continued treatment of a prisoner by the Department of Mental Health as a condition of the prisoner's parole if: "(d)(1) . . . the person in charge of treating the prisoner and a practicing psychiatrist or psychologist from the State Department of Mental Health have evaluated the prisoner . . . and a chief psychiatrist of the Department of Corrections has certified . . . that the prisoner has a severe mental disorder, that the disorder is not in remission, or cannot be kept in remission without treatment, that the severe mental disorder was one of the causes or was an aggravating factor in the prisoner's criminal behavior, that the prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to his or her parole release day, that the prisoner used force or violence or caused serious bodily injury in committing the crime [for which the prisoner was sentenced], and that by reason of his . . . severe mental disorder the prisoner represents a substantial danger of physical harm to others."

The record reflects that, while at Atascadero State Hospital, White was seen by various doctors at different times. Some had a more active role than others in his treatment. During this time the only single "person in charge of treating the prisoner" was the chief psychiatrist at the institution, Doctor Zil. Doctor Zil was also the chief psychiatrist of the Department of Corrections who certified to the BPT that the prisoner met the MDO criteria. As the People point out, there is nothing in the statute that prohibits the person in charge from delegating duties of evaluation. Nor is there anything in the statute which prohibits Doctor Zil from acting both as the person in charge who delegates the duty to evaluate and as a chief psychiatrist who certifies the patient meets the MDO criteria.

In this case, Doctor Zil, the person in charge of treatment for all prisoners, was the person in charge of treating White. The trier of fact could reasonably find that there was substantial evidence that Doctor Pickens was in charge of

*See footnote, *ante,* page 638.

treating and evaluating White under Doctor Zil's supervision. That Doctor Pickens was a psychologist who could not prescribe medication does not preclude him from being a person in charge. White, and other patients like him, are seen by a variety of specialists who are in charge of various aspects of treatment, including physicians who may prescribe required medications and other medical professionals who may not.

In describing the two individuals who are to evaluate a prisoner to determine if he is an MDO, the Legislature specified that one be "a practicing psychiatrist or psychologist," but chose not to limit "the person in charge of treating the prisoner" to any particular medical specialty. We assume the Legislature was aware of the manner in which medical care is customarily delegated and did not want to interfere with the medical profession's usual and necessary practice of delegating authority to provide treatment. (See, e.g., *Trane Co.* v. *Gilbert* (1968) 267 Cal.App.2d 720, 726 [73 Cal.Rptr. 279]; Civ. Code, § 2349.) The Legislature used the phrase, "person in charge," and did not include a definition of that term in the statute in order to provide flexibility. This allows the person in charge of treatment to delegate to another person the task of performing the actual evaluation.

It is true the testifying doctors could not identify with certainty the person in charge of White's treatment. The jury, however, could reasonably conclude there was sufficient evidence to find that the person in charge of White's treatment was involved in the evaluations. It is not the function of this court to reweigh the evidence. (*People* v. *Miller* (1994) 25 Cal.App.4th 913, 920 [31 Cal.Rptr.2d 423].)[1]

[[II.-IV.]]*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

The judgment (order of commitment) is affirmed.

Stone (S. J.), P. J., and Yegan, J., concurred.

---

[1]The Department of Mental Health may wish to revise its forms or procedures in order to make it easier for the trier of fact at a Penal Code section 2966 hearing to determine that the evaluations come within the requirements of Penal Code section 2962.

*See footnote, *ante*, page 638.