Filed 10/31/13

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
             )
   Plaintiff and Respondent, )
             )      S199830
   v. )
             )    Ct.App. 4/2 E051465
KELVIN HARRISON, )
             )    San Bernardino County
   Defendant and Appellant. )  Super. Ct. No. FELSS1001624
_____ )

   Penal Code section 2962, which is part of the Mentally Disordered
Offender (MDO) Act, requires civil commitment of a state prisoner during and
after parole when a chief psychiatrist of the Department of Corrections and
Rehabilitation has certified that the prisoner suffers from a severe mental disorder
that is not or cannot be kept in remission without treatment, that the disorder was
one of the causes of or an aggravating factor in the prisoner's qualifying crime,
that the prisoner has been in treatment for the disorder for at least 90 days within
the year preceding release on parole, and that the prisoner represents a substantial
danger of physical harm to others by reason of the disorder.  (Pen. Code, § 2962,
subd. (d)(1).)  A prisoner may challenge the MDO certification by requesting a
hearing before the Board of Parole Hearings (Board) and, if unsuccessful, in
superior court as to whether the prisoner "meets the criteria in Section 2962."
(Pen. Code, § 2966, subd. (a); see also *id*., subd. (b).)

   What constitutes "the criteria in section 2962"?  The Court of Appeal
concluded that the "criteria" to be considered by the trier of fact at the superior

1

court hearing include not only the substantive criteria that were used by mental health professionals to determine whether the prisoner was an MDO, but also the *procedures* by which the MDO determination was made—such as whether the person in charge of the prisoner's treatment at the Department of Corrections and Rehabilitation and a practicing psychiatrist or psychologist from the State Department of State Hospitals evaluated the prisoner at a facility of the Department of Corrections and Rehabilitation, whether the evaluators concurred as to the prisoner's condition, and whether a chief psychiatrist of the Department of Corrections and Rehabilitation certified the prisoner as an MDO to the Board. (Pen. Code, § 2962, subd. (d)(1), (2).) The Court of Appeal relied on the absence of evidence before the trier of fact that appellant Kelvin Harrison had been "evaluated by 'the person in charge of [his] treatment' " or "by 'a practicing psychiatrist or psychologist from the State Department of [State Hospitals]" or that he "was certified by the chief psychiatrist" to conclude that there was "insufficient evidence" to support what the Court of Appeal characterized as "the evaluation and certification criterion" of Penal Code section 2962. The Court of Appeal thus reversed the judgment classifying Harrison as an MDO and ordered a new hearing.

We conclude the Court of Appeal erred. The evaluation and certification provisions of Penal Code section 2962 specify the *procedures* by which an MDO determination is initiated; they do not constitute the statutory *criteria* by which the trier of fact at a hearing decides whether a prisoner is or is not an MDO. We therefore reverse the Court of Appeal and remand for further proceedings.

## BACKGROUND

Kelvin Harrison was convicted of battery with serious bodily injury (Pen. Code, § 243, subd. (d)) and sentenced to two years in prison in March 2009. He was due for release on parole on February 28, 2010, but was required to accept treatment as an MDO. On April 5, 2010, the Board affirmed Harrison's

2

certification as an MDO under Penal Code[1] section 2962. On April 23, 2010, Harrison petitioned for a hearing in superior court under section 2966, subdivision (b) to challenge the Board's determination. Jury trial was waived.

At the bench trial, Dr. Robert Suiter, a forensic psychologist with an expertise in evaluating MDO's, testified that he interviewed Harrison at the Board's request on March 16, 2010. He also examined Harrison's two previous MDO evaluations, his psychiatric records, and certain documents from his prison file.

Dr. Suiter diagnosed Harrison, who had been discharged from the military in 1983 with a diagnosis of schizophrenia and depression, as suffering from schizophrenia, paranoid type—a severe mental disorder that impaired his thoughts and perceptions of reality and grossly impaired his behavior. Harrison's most prominent symptoms were his paranoid and grandiose delusions that San Luis Obispo County officials and law enforcement were conspiring against him or his family and were trying to do him harm. In Dr. Suiter's opinion, Harrison was not in remission and lacked insight into his disorder.

Dr. Suiter opined that Harrison's schizophrenia was an aggravating factor in or cause of the crime that resulted in his conviction of battery with serious bodily injury. At the time of the offense, Harrison believed that grapes in a bag on the ground were filled with blood, which he interpreted to mean that the victim intended to harm him. In response, defendant struck the victim several times with a pipe. Dr. Suiter also testified that Harrison represented a substantial danger of physical harm to others by reason of his schizophrenia, in that he was prone to misinterpret environmental cues to suggest he was at physical risk. Without

---

[1]     All further unspecified statutory references are to the Penal Code.

insight into his mental disorder, Harrison was unable to control his behavior and unlikely to seek treatment and therefore presented the "on-going potential" of continuing to commit violent crimes.

Harrison had received well over 90 days of treatment within the prior year, both at Patton State Hospital and, before that, at the prison.

Harrison testified that he did not recognize Dr. Suiter and did not recall being interviewed by him. Harrison admitted he had been diagnosed with schizophrenia and depression when he was discharged from the military, but said he had received excellent treatment from the Department of Veterans Affairs before moving to San Luis Obispo. He did not believe his mental disorders contributed to his crime. When asked whether he currently suffers from a mental disorder, Harrison replied, "Yes, sir. I do suffer from being very concerned about my family members, my mother and sister, because I'm the only male of the household." He also insisted that his mental disorder did not have "anything" to do with the thousands of communications he has sent officials in San Luis Obispo.

On July 21, 2010, the superior court determined that Harrison met the criteria of an MDO. The court ordered he be committed to the State Department of State Hospitals for an additional year, until April 5, 2011.

The Court of Appeal reversed. It found insufficient evidence in the record of the superior court hearing that Harrison, prior to the hearing, had been evaluated and certified by the personnel specified in section 2962, subdivision (d), and held that the absence of such evidence required reversal of the judgment determining him to be an MDO.

We granted the People's petition for review. After review was granted and briefing was completed, Harrison's counsel informed us that a petition to extend Harrison's commitment under section 2970 had been heard and denied in San Luis Obispo County Superior Court and that Harrison was released from custody upon

4

the completion of his parole on February 28, 2013. As both parties concede, the issue in this appeal is now moot as to Harrison. At their request, though, we will exercise our inherent discretion to resolve the issue concerning the scope of the "criteria" that must be proved to the trier of fact at a hearing in superior court under section 2966, subdivision (b). The issue is one of broad public interest that is likely to recur, and the relatively short MDO commitment may otherwise cause the question to evade review. (*Blakely v. Superior Court* (2010) 182 Cal.App.4th 1445, 1455, fn. 3; see generally *San Jose Mercury-News v. Superior Court* (1982) 30 Cal.3d 498, 501, fn. 2.)

## DISCUSSION

Enacted in 1985, the MDO Act requires that an offender who has been convicted of a specified felony related to a severe mental disorder and who continues to pose a danger to society receive appropriate treatment until the disorder can be kept in remission. (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1061.) "The MDO Act has the dual purpose of protecting the public while treating severely mentally ill offenders." (*Ibid.*)

An initial MDO commitment occurs as a condition of parole, and is governed by section 2962. The initial MDO commitment is triggered by a certification by a chief psychiatrist of the Department of Corrections and Rehabilitation that the prisoner has a severe mental disorder, that the disorder is not in remission or cannot be kept in remission without treatment, that the disorder was a cause of or an aggravating factor in an enumerated crime for which the prisoner was sentenced to prison, that the prisoner has been in treatment for the disorder for 90 days or more in the year preceding release on parole, and that the prisoner represents a substantial danger of physical harm to others because of the disorder. (§ 2962, subd. (d)(1).)

5

Challenges to an MDO certification are governed by sections 2964 and 2966. Section 2964, subdivision (a) provides that "[a]ny prisoner who is to be required to accept treatment pursuant to Section 2962 shall be informed in writing of his or her right to request a hearing pursuant to Section 2966." Section 2966, subdivisions (a) and (b) set forth the procedure by which an MDO may request a hearing to challenge the validity of the initial commitment. A prisoner who disagrees with the MDO certification decision may request a hearing before the Board "for the purpose of proving that the prisoner meets the criteria in Section 2962." (§ 2966, subd. (a); see § 5075, subd. (a) [all statutory references to the Board of Prison Terms now refer to the Board of Parole Hearings].) If the prisoner disagrees with the Board's determination that he or she "meets the criteria of Section 2962," the prisoner may file a petition for a hearing in the superior court "on whether he or she, as of the date of the Board . . . hearing, met the criteria of Section 2962." (§ 2966, subd. (b).) At the superior court hearing, the burden is on the People to establish the criteria of section 2962 beyond a reasonable doubt. (*Ibid*.)

What, then, *are* the criteria of section 2962? The opening clause of section 2962 provides that "the State Department of State Hospitals shall provide the necessary treatment" to a prisoner "who meets the following criteria." Six subdivisions follow the colon placed at the end of the opening clause.

Some subdivisions of section 2962 describe the substantive bases for determining whether a prisoner qualifies as an MDO. For example, subdivision (a) requires the prisoner to have "a severe mental disorder that is not in remission or cannot be kept in remission without treatment," and defines the terms " 'severe mental disorder' " and " 'remission' "; subdivision (b) requires the severe mental disorder be "one of the causes of" or "an aggravating factor in the commission of a crime for which the prisoner was sentenced to prison"; and subdivision (c)

6

requires the prisoner have "been in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release."

Some of the subdivisions of section 2962 define terms used in other subdivisions. Subdivision (e) enumerates the qualifying crimes for which the prisoner was sentenced to prison in subdivision (b). Subdivision (f) defines " 'substantial danger of physical harm' " as used in subdivision (d)(1) and elsewhere in the chapter. (See, e.g., §§ 2966, subd. (c), 2970, 2972, subds. (c), (e).)

Section 2962, subdivision (d), which is quite lengthy, sets forth both the criteria by which specified mental health professionals are to determine whether the prisoner qualifies as an MDO and the procedures by which that evaluation and certification is to be conducted:

"(1) Prior to release on parole, the person in charge of treating the prisoner and a practicing psychiatrist or psychologist from the State Department of State Hospitals have evaluated the prisoner at a facility of the Department of Corrections and Rehabilitation, and a chief psychiatrist of the Department of Corrections and Rehabilitation has certified to the Board of Parole Hearings that the prisoner has a severe mental disorder, that the disorder is not in remission, or cannot be kept in remission without treatment, that the severe mental disorder was one of the causes or was an aggravating factor in the prisoner's criminal behavior, that the prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to his or her parole release day, and that by reason of his or her severe mental disorder the prisoner represents a substantial danger of physical harm to others. For prisoners being treated by the State Department of State Hospitals pursuant to Section 2684, the certification shall be by a chief psychiatrist of the Department of Corrections and Rehabilitation, and the evaluation shall be done at a state hospital by the person at the state hospital in

7

charge of treating the prisoner and a practicing psychiatrist or psychologist from the Department of Corrections and Rehabilitation.

"(2) If the professionals doing the evaluation pursuant to paragraph (1) do not concur that (A) the prisoner has a severe mental disorder, (B) that the disorder is not in remission or cannot be kept in remission without treatment, or (C) that the severe mental disorder was a cause of, or aggravated, the prisoner's criminal behavior, and a chief psychiatrist has certified the prisoner to the Board of Parole Hearings pursuant to this paragraph, then the Board of Parole Hearings shall order a further examination by two independent professionals, as provided for in Section 2978.

"(3) If at least one of the independent professionals who evaluate the prisoner pursuant to paragraph (2) concurs with the chief psychiatrist's certification of the issues described in paragraph (2), this subdivision shall be applicable to the prisoner. The professionals appointed pursuant to Section 2978 shall inform the prisoner that the purpose of their examination is not treatment but to determine if the prisoner meets certain criteria to be involuntarily treated as a mentally disordered offender. It is not required that the prisoner appreciate or understand that information."

Harrison contends that everything in section 2962 following the colon is part of the MDO criteria, including the evaluation and certification procedure. Under this interpretation, the trier of fact would have to find not only that the prisoner has a severe mental disorder, but *also* that the person in charge of treating the prisoner and a practicing psychiatrist or psychologist agree (after conducting an evaluation at a facility of the Department of Corrections and Rehabilitation) that the prisoner has a severe mental disorder, *and* that a chief psychiatrist of the Department of Corrections and Rehabilitation has so certified. (§ 2962, subds. (a), (d)(1), (2).) Similarly, the trier of fact would have to find not only that the

8

disorder is not in remission or cannot be kept in remission without treatment, but *also* that the person in charge of treating the prisoner and a practicing psychiatrist or psychologist agree (again, after conducting an evaluation at a facility of the Department of Corrections and Rehabilitation) that the disorder is not in remission or cannot be kept in remission without treatment, *and* that a chief psychiatrist of the Department of Corrections and Rehabilitation has so certified. (*Ibid.*) And the trier of fact would have to find not only that the disorder was a cause of, or aggravated, the prisoner's criminal behavior, but *also* that the specified individuals evaluated the prisoner at the requisite facility and agreed that the disorder was a cause of, or aggravated, the criminal behavior, *and* that a chief psychiatrist so certified. (§ 2962, subds. (b), (d)(1), (2).) In the event the person in charge of treating the prisoner and a practicing psychiatrist or psychologist did not agree as to these findings, the trier of fact presumably would then determine whether two independent professionals had been appointed to evaluate the prisoner, whether at least one of the independent professionals agreed the prisoner suffers from a severe mental disorder that is not in remission and that was a cause of or aggravated the criminal behavior, and whether the independent professionals who examined the prisoner informed the prisoner "that the purpose of their examination is not treatment but to determine if the prisoner meets certain criteria to be involuntarily treated as a mentally disordered offender." (§ 2962, subd. (d)(2), (3).)

The People, on the other hand, reason that section 2962 specifies not only the *criteria* for an MDO commitment—i.e., the criteria used by the mental health professionals and the hearings by the Board and superior court—but also the *procedures* by which the MDO determination is to be made. A prisoner thus qualifies as an MDO if he or she suffers from a severe mental disorder that is not in remission or cannot be kept in remission without treatment (§ 2962, subds. (a),

9

(d)(1)), the disorder was a cause of or aggravating factor in the commission of the qualifying felony for which he or she was sentenced to prison (*id*., subds. (b), (d)(1), (e)), the prisoner has been in treatment for the disorder for at least 90 days in the preceding year (*id*., subds. (c), (d)(1)), and the prisoner represents a substantial danger of physical harm to others by reason of the disorder (*id*., subds. (d)(1), (f)). The evaluation and certification procedure set forth in subdivision (d) of section 2962, by contrast, identifies who is to conduct the evaluations, where the evaluations are to take place, what happens when the evaluators do not agree, and who is to certify the MDO finding to the Board—but compliance with those procedures, while required by the statute, is not part of the determination by the trier of fact at the hearing as to whether the prisoner meets the criteria of an MDO.

"As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) " 'When the language of a statute is clear, we need go no further.' [Citation.] But where a statute's terms are unclear or ambiguous, we may 'look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' " (*In re M.M.* (2012) 54 Cal.4th 530, 536.)

What "the following criteria" means in the context of section 2962 is ambiguous. The reference to "the following criteria" could be read to imply that "criteria" is defined to be *everything* that follows the opening clause. Alternatively, "the following criteria" could be read to refer simply to the criteria that appear in the body of the statute. Moreover, the word "criteria" can have multiple meanings. The word most often has been used both by the Legislature

10

and by California courts to distinguish the substantive basis for decision from the procedures by which that decision is to be made. (See, e.g., Bus. & Prof. Code, § 5094, subd. (d); Health & Saf. Code, § 19957.5, subd. (c); Pen. Code, §§ 1174.2, subd. (b), 13864, subd. (a); Pub. Res. Code, § 5756; Welf. & Inst. Code, § 726.5, subd. (a); *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 565; *Conservatorship of Valerie N.* (1985) 40 Cal.3d 143, 168; *The Formula, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1455, 1465; accord, *Massachusetts Trustees of Eastern Gas & Fuel Associates v. United States* (1964) 377 U.S. 235, 248.) On the other hand, the Legislature and our courts have occasionally recognized the existence of "procedural criteria." (See, e.g., Ed. Code, § 56100, subd. (g); *Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 858; *City of Burbank v. Burbank-Glendale-Pasadena Airport Authority* (2003) 113 Cal.App.4th 465, 472.) Accordingly, whether the evaluation and certification procedure constitutes part of the "criteria" under section 2962 cannot be determined from the plain language of the statute alone. We therefore turn to extrinsic aids.

The legislative history, for the most part, confirms the distinction between the substantive criteria by which the specified mental health professionals (and, if necessary, the Board and superior court) determine whether a prisoner is an MDO and the procedures by which that determination is to be made. The criteria for determining whether a prisoner qualified as an MDO were initially set forth in former section 2960, subdivision (b)(1)-(5), which closely resembled present section 2962, subdivisions (a)-(e). (Stats. 1985, ch. 1419, § 1, p. 5011.) An analysis by the Senate Judiciary Committee of the 1985 bill that became former section 2960 described the "Affected prisoners" to be those "who met the following criteria": (1) "The prisoner had a mental disorder that was not in remission or that could not be kept in remission"; (2) "The mental disorder caused,

11

was one of the causes of, or was an aggravating factor in the commission of the crime for which the prisoner was sentenced"; (3) "The prisoner had been in treatment for 90 days or more for the mental illness"; and (4) "The prisoner was convicted of a crime in which she used force or violence and caused serious bodily injury." (Sen. Com. on Judiciary, Ofc. Of Sen. Floor Analyses, analysis of Sen. Bill No. 1296 (1985-1986 Reg. Sess.) as amended Apr. 18, 1985, pp. 4-5.) The committee analysis also identified which mental health professionals "would have to certify the *above criteria* to the Board." (*Id*. at p. 5, italics added.) A subsequent analysis by the Senate Rules Committee likewise identified the mental health professionals who "would have to certify the prisoner met the criteria to the Board" and stated that "prisoners who met the specified criteria [were] required to be treated by the Department of Mental Health." (Sen. Rules Com., Analysis of Sen. Bill No. 1296 (1985-1986 Reg. Sess.) as amended Sept. 10, 1985, p. 3.) Enrolled bill reports by the two executive branch agencies that gained important responsibilities under the bill, the former Department of Corrections and the former Department of Mental Health, similarly described the "commitment criteria" as the substantive "criteria" listed above. (Cal. Dept. of Mental Health, Enrolled Bill Rep. on Sen. Bill No. 1296 (1985-1986 Reg. Sess.) as amended June 25, 1985, p. 2; see also Cal. Dept. of Corrections, Enrolled Bill Rep. on Sen. Bill No. 1296 (1985-1986 Reg. Sess.) Sept. 25, 1985, p. 2-3.)

The only part of the legislative history to suggest that the evaluation and certification procedure was part of the "criteria" for identifying MDO's were those bill summaries prepared by the Department of Finance, which added to the four criteria in the preceding paragraph a "certification by Corrections and/or Mental Health that 1) [a severe mental disorder that is not in remission or cannot be kept in remission] *or* 2) [the disorder caused or aggravated the commission of the crime for which the prisoner was sentenced] above exist *or* that the inmate will not

12

follow appropriate voluntary treatment" and then summarily concluded that "[p]risoners meeting these criteria will be committed to the Department of Mental Health for inpatient treatment." (E.g., Dept. of Finance, Summary of Sen. Bill No. 1296 (1985-1986 Reg. Sess.) as amended Sept. 10, 1985, pp. 1-2, italics added.) We are not persuaded that the Department of Finance summaries are entitled to much weight, since they flatly misstate what must be certified to the Board. Former section 2960, subdivision (b)(4) did not treat the existence of a mental disorder that is not in remission and the existence of a mental disorder that caused or aggravated the commission of the crime as *disjunctive* factors; rather, the statute explicitly required certification of both. Moreover, an inmate's refusal to follow voluntary treatment was merely one of the ways to establish that the mental disorder was not or could not be kept in remission (*In re Qawi* (2004) 32 Cal.4th 1, 24; § 2962, subd. (a)(3)); it was not a substitute for the existence of the mental disorder or its role in the commission of the crime for which the prisoner was sentenced. (Compare Dept. of Finance, Summary of Sen. Bill No. 1296, *supra*, at p. 1 with former § 2960, subd. (b)(4).)

The legislative history of subsequent amendments to the MDO Act further evidences the Legislature's understanding of the distinction between the substantive MDO criteria and the procedures that govern the MDO determination. (See *In re Ramon A.* (1995) 40 Cal.App.4th 935, 940, fn. 2.) An analysis of the 1987 amendment to section 2962 by the Assembly Committee on Public Safety listed "the following criteria" for an MDO determination: (1) "The prisoner has a severe mental disorder"; (2) "The disorder cannot be kept in remission without treatment"; (3) "The disorder was one of the causes or was an aggravating factor in the prisoner's criminal behavior"; (4) "The prisoner was convicted of a violent felony, as specified"; and (5) "The prisoner has received treatment for 90 days or more prior to release." (Assem. Com. on Public Safety, Analysis of Sen. Bill No.

13

425 (1987-1988 Reg. Sess.) as amended May 4, 1987, p. 2.) The Senate Rules Committee explained the purpose of the 1987 amendment by noting that one of the existing criteria "is that the prisoner has been in treatment of the disorder for 90 days or more within the year prior to parole or release" and that the chief psychiatrist was already required "to certify to the Board that the prisoner meets all the criteria except the 90 day prior treatment. This bill would require the psychiatrist to certify that the prisoner meets the 90 day prior treatment and the use of force, violence, or bodily harm requirements." (Sen. Rules Com., Analysis of Sen. Bill No. 425 (1987-1988 Reg. Sess.) as amended May 4, 1987, p. 2.) The amendment's effect was thus to "make the criteria for certification that is presently used by psychotherapist[s] conform to the criteria . . . used at the certification hearing." (Bd. of Prison Terms, Analysis of Sen. Bill No. 425 (1987-1988 Reg. Sess.) as amended May 4, 1987, p. 3.) Nowhere did the Legislature indicate that the evaluation and certification procedures should be considered part of the criteria for an MDO determination. Indeed, such a construction would make no sense in light of the Legislature's efforts to "conform" the criteria used by the psychotherapists to certify a prisoner as an MDO to the criteria used in reviewing that certification. (*Ibid*.)

Longtime administrative construction of section 2962 affirms that the relevant criteria are the criteria used by the specified mental health professionals in classifying a prisoner as an MDO. A regulation promulgated by the Board of Parole Hearings interpreting section 2962 (see Cal. Reg. Notice Register 87, No. 41-Z, pp. 335-336) provides that "[a]s a condition of parole, a prisoner who meets the following specified criteria shall be required to be treated by the State Department of Mental Health and the State Department of Mental Health shall provide the necessary treatment:

"(a) The prisoner has a severe mental disorder.

14

"(b) The mental disorder is not in remission, or cannot be kept in remission without treatment.

"(c) The severe mental disorder was one of the causes of or was an aggravating factor in the commission of a crime for which the prisoner was sentenced to prison.

"(d) The crime referred to in section 2571, subdivision (c), for which the prisoner was sentenced to prison, must have been a crime in which the prisoner used force or violence, or caused serious bodily injury, and must have occurred on or after January 1, 1986.

"(e) The prisoner has been in treatment for the severe mental disorder for ninety (90) days or more within the year prior to the prisoner's parole or release.

"(f) The prisoner represents a substantial danger of physical harm to others by reason of his or her severe mental disorder. Substantial danger of physical harm does not require proof of a recent overt act." (Cal. Code of Regs., tit. 15, § 2571; see also *id*., § 2570, subds. (a) [defining "Certification Hearing"], (d) [defining "Mentally Disordered Offender"].) The regulation nowhere suggests that compliance with the evaluation and certification procedures was an additional criterion.

Although the interpretation of a statute is ultimately a legal question for a court (*Sara M. v. Superior Court* (2005) 36 Cal. 4th 998, 1011), we " 'must give great weight and respect to an administrative agency's interpretation of a statute governing its powers and responsibilities. [Citation.] Consistent administrative construction of a statute, especially when it originates with an agency that is charged with putting the statutory machinery into effect, is accorded great weight.' " (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 292.) Deference to the administrative interpretation of a statute is further justified when the regulation was reasonably contemporaneous

15

with the adoption of the statute and was promulgated in conformance with formal procedures.  (*Sara M.*, *supra*, 36 Cal.4th at p. 1013.)

The interpretive regulation here satisfies each of these elements.  The regulation specifying the criteria for treatment as an MDO was promulgated after public notice and comment by the Board of Parole Hearings, which is tasked with conducting "a hearing if so requested, for the purpose of proving that the prisoner meets the criteria in Section 2962."  (§ 2966, subd. (a).)  This regulation tracks in relevant part the original 1987 emergency regulation (compare Cal. Code Regs., tit. 15, former § 2571, Register 87, No. 50 (Dec. 12, 1987) with *id.*, tit. 15, § 2571, Register 91, No. 11 (Feb. 4, 1991)), which was reasonably contemporaneous with the adoption of the MDO statute—a statute that applied only to persons who committed their crimes on or after January 1, 1986, and were eligible for parole. And the Board's interpretation has been consistent over the past 26 years. Accordingly, we will not overturn the Board's definition of the section 2962 criteria " ' "unless clearly erroneous." ' "  (*Sara M. v. Superior Court*, *supra*, 36 Cal.4th at p. 1012.)  No clear error appears.

Our interpretation also promotes the purpose of the MDO Act, which is set forth plainly in the legislative findings and declarations that were codified as former section 2960, subdivision (a) and that now appear in present section 2960: "The Legislature finds that there are prisoners who have a treatable, severe mental disorder that was one of the causes of, or was an aggravating factor in the commission of the crime for which they were incarcerated.  Secondly, the Legislature finds that if the severe mental disorders of those prisoners are not in remission or cannot be kept in remission at the time of their parole or upon termination of parole, there is a danger to society, and the state has a compelling interest in protecting the public.  Thirdly, the Legislature finds that in order to protect the public from those persons it is necessary to provide mental health

16

treatment until the severe mental disorder which was one of the causes of or was an aggravating factor in the person's prior criminal behavior is in remission and can be kept in remission." If a factfinder has determined beyond a reasonable doubt that the prisoner has a severe mental disorder that is not or cannot be kept in remission without treatment, that the disorder was a cause of or aggravated the qualifying crime for which the prisoner is incarcerated, that the prisoner received treatment for at least 90 days in the year preceding parole, and that by reason of the disorder the prisoner represents a substantial danger of physical harm to others, the public's interest in safety and the prisoner's need for appropriate treatment are not furthered by having the trier of fact, rather than the court, determine whether a particular evaluation or certification was performed by a specified individual or at a particular place.

We find additional support for our conclusion by examining the Sexually Violent Predators Act (SVP Act; Welf. & Inst. Code, § 6600 et seq.), another involuntary commitment scheme that shares the same purpose as the MDO Act: " 'to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders.' " (*People v. McKee* (2010) 47 Cal.4th 1172, 1203.) Before a commitment petition may be filed under the SVP Act, there must be a concurrence of two evaluators, who are practicing psychiatrists or psychologists, that the prisoner has a diagnosed mental disorder such that "he or she is likely to engage in acts of sexual violence without appropriate treatment and custody." (Welf. & Inst. Code, § 6601, subd. (d); see *Reilly v. Superior Court* (2013) 57 Cal.4th 641, 647.) The concurrence of these evaluators, however, does not need to be proved to the trier of fact. Like the evaluation and certification procedural safeguards in the MDO Act, "the requirement for evaluations [in the SVP Act] is not one affecting the disposition of the merits; rather, it is a collateral procedural condition plainly designed to ensure

17

that SVP proceedings are initiated only when there is a substantial factual basis for doing so." (*People v. Superior Court* (*Preciado*) (2001) 87 Cal.App.4th 1122, 1130.) "After the petition is filed, rather than demonstrating the existence of two evaluations, the People are required to show the more essential fact that the alleged SVP is likely to engage in sexually violent predatory criminal behavior." (*Ibid.*; see also *People v. Dean* (2009) 174 Cal.App.4th 186, 203.) The same is true here. The evaluation and certification requirement is a collateral procedural condition designed to ensure that a prisoner is certified as an MDO only when there is a substantial factual basis for doing so. Once the prisoner has been certified as an MDO, however, the People are required at the hearing to prove the more essential facts that the prisoner suffers from a severe mental disorder that is not in remission, that the disorder caused or aggravated the enumerated offense for which the prisoner is incarcerated, that the prisoner has been in treatment for the disorder for at least 90 days in the preceding year, and that the disorder renders the prisoner a substantial danger of physical harm to others.

Moreover, Harrison's proposed interpretation of section 2962 would raise serious questions as to the constitutionality of the MDO scheme. Section 2962, subdivision (d)(1) was amended by urgency legislation in 1989 to require that the certification by a chief psychiatrist include a finding "that by reason of his or her severe mental disorder the prisoner represents a substantial danger of harm to others." (Stats. 1989, ch. 228, § 1, pp. 1253.) The amendment was in response to a ruling by the Court of Appeal that the MDO Act violated the equal protection clauses of the federal and state Constitutions by failing to require proof of present dangerousness. (*People v. Superior Court* (*Myers*) (1996) 50 Cal.App.4th 826, 830, citing *People v. Gibson* (1988) 204 Cal.App.3d 1425.) Although the 1989 amendment supplied the *only* mention of the requirement of present dangerousness in section 2962, the legislative history nonetheless explicitly stated that the

18

amendment "corrects that constitutional defect by requiring a finding, by proof beyond a reasonable doubt, that by reason of his or her severe mental disorder the patient represents a substantial danger of physical harm to others." (Off. of Sen. Floor Analysis, 3d reading analysis of Sen. Bill No. 1625 (1989-1990 Reg. Sess.) as amended June 26, 1989, p. 2; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1625 (1989-1990 Reg. Sess.) as amended May 17, 1989, p. 2.)

Because our interpretation of the MDO Act ensures, as the Legislature intended, that the criteria used by the mental health professionals in determining whether the prisoner qualifies as an MDO matches the criteria used at the hearing to review that determination (Bd. of Prison Terms, Analysis of Sen. Bill No. 425 (1987-1988 Reg. Sess.) as amended May 4, 1987, p. 3.), the statute thus requires both the mental health professionals and the reviewing court to consider whether "by reason of his or her severe mental disorder the prisoner represents a substantial danger of harm to others." (§ 2962, subd. (d).) Under Harrison's interpretation, however, subdivision (d) of section 2962 merely "puts in issue the fact that the evaluations and certifications occurred and does not put in issue the truth of the matters certified." Under his proposed reading of the statute, therefore, the People would need to prove to the trier of fact at the superior court hearing only that *a chief psychiatrist certified* the prisoner as representing a substantial danger of harm to others by virtue of the mental disorder as of the date of the Board hearing, not that the prisoner actually *did* represent a substantial danger of harm to others by virtue of the mental disorder as of the date of the Board hearing. The application of this lower standard of proof of present dangerousness for MDO's compared to other civil committees could raise serious questions under the equal protection clause. (See *People v. Gibson*, *supra*, 204 Cal.App.3d at pp. 1435-1441.) "Under well-established precedent, of course, a statute must be construed, if reasonably possible, in a manner that avoids a serious

19

constitutional question." (*People v. Engram* (2010) 50 Cal.4th 1131, 1161.) For this reason, too, Harrison's proposed interpretation must be rejected.

Our conclusion does not mean, as the Court of Appeal feared, that the issue of compliance with the evaluation and certification procedure would thereby be rendered "irrelevant" in a prisoner's challenge to an MDO certification. In the view of the Court of Appeal, unless the People were forced to shoulder the burden of proving compliance with these procedures in every MDO case to the trier of fact beyond a reasonable doubt, "we have no way of knowing whether appellant was evaluated by 'the person in charge of [his] treatment,' " "whether he was evaluated by 'a practicing psychiatrist or psychologist from the State Department of Mental Health,' " and "whether the evaluators concluded that appellant did meet the requisite criteria." Not so. The issue of compliance with these procedures is a " 'procedural prerequisite[]' " for classifying the prisoner as an MDO, "much like a 'valid preliminary hearing bindover' or a 'grand jury charge' " is a " 'procedural prerequisite[] for prosecution.' " (*People v. Posey* (2004) 32 Cal.4th 193, 208.) As such, it is a question of law for the court, not an issue for the trier of fact.

The Court of Appeal's attempt to classify the issue of compliance with the evaluation and certification procedure as a question of fact would be "inconsistent with contemporary treatment of other, analogous procedural issues," such as compliance with speedy trial and venue requirements. (*People v. Simon* (2001) 25 Cal.4th 1082, 1110, fn. 18; see *People v. Posey*, *supra*, 32 Cal.4th at p. 200; see generally Evid. Code, § 310, subd. (a).) Indeed, defendant offers no reason why a prisoner should be forced to go through a full hearing before the trier of fact to establish a defect in the procedure by which the prisoner was classified as an MDO when the prisoner, upon a timely objection, would be able to establish the

20

defect *prior to* any hearing and, in an appropriate case, obtain relief without the need for a jury trial at all. (Cf. *Posey*, *supra*, 32 Cal.4th at p. 200.)

Where, as here, though, the prisoner did not timely object to an alleged defect in the procedures underlying the evaluation process, the objection is forfeited. " ' " 'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " ' " (*People v. Simon*, *supra*, 25 Cal.4th at p. 1103.) The " 'procedural prerequisite[]' " of venue, for example, is not rendered irrelevant simply because the People do not have the burden to establish venue beyond a reasonable doubt in every criminal case. (*People v. Posey*, *supra*, 32 Cal.4th at p. 208.) Venue, like the MDO evaluation procedures, "does not involve a matter of a court's fundamental authority or subject matter jurisdiction over a proceeding," but is a procedural right afforded the accused. (*People v. Simon*, *supra*, 25 Cal.4th at p. 1103.) Absent a timely objection, the People have no obligation to present evidence establishing venue in a criminal prosecution. Although a civil commitment proceeding is not criminal in nature, it does afford the prisoner many of the protections of a criminal defendant: the prisoner has the right to an attorney and a jury trial; the hearing is to be conducted within a fixed period of time unless time is waived or good cause is shown; the burden of proof is on the People; the standard of proof is beyond a reasonable doubt; and the verdict must be unanimous. (Pen. Code, § 2966, subd. (b).) In addition, the prisoner is provided a copy of the certification, and "all supporting documentation leading to the conclusion shall be attached." (Cal. Code Regs., tit. 15, § 2572, subd. (b); see also Pen. Code, § 2966, subd. (b).) There is thus no unfairness in requiring a prisoner who claims noncompliance with one or more of the evaluation procedures to make a timely objection on that basis and thereby

21

alert the People to the need to offer evidence of compliance. This approach will allow the court to resolve that objection prior to the hearing and, if meritorious, order an appropriate remedy. (Cf. *People v. Simon*, *supra*, 25 Cal.4th at p. 1108.)

For the foregoing reasons, we conclude that the "criteria" of section 2962 refer to the substantive criteria used by mental health professionals to certify a prisoner as an MDO to the Board—namely, whether the prisoner has a severe mental disorder, whether the disorder is not in remission or cannot be kept in remission without treatment, whether the disorder was a cause of or an aggravating factor in the commission of a crime listed in the statute for which the prisoner is incarcerated, whether the prisoner has been in treatment for the disorder for at least 90 days within the year prior to release on parole, and whether by reason of the disorder the prisoner represents a substantial danger of physical harm to others. (See CALCRIM No. 3456.) Section 2962 does not require that compliance with the evaluation and certification procedures be proved to the trier of fact; instead, the issue of compliance with those procedures is a question of law for the court.[2]

---

[2] To the extent language in *Lopez v. Superior Court*, *supra*, 50 Cal.4th at page 1059, footnote 3, *People v. White* (1995) 32 Cal.App.4th 638, 641-642, and *People v. Miller* (1994) 25 Cal.App.4th 913, 919-920, suggests or assumes that the evaluation and certification procedure is part of the criteria that must be proved to the trier of fact in reviewing whether a prisoner qualifies as an MDO, it is disapproved.

**DISPOSITION**

The judgment of the Court of Appeal is reversed and the cause is remanded to the Court of Appeal to determine, in the first instance, whether Harrison's remaining claims are moot.

**BAXTER, J.**

WE CONCUR:

CANTIL-SAKAUYE, C. J.
KENNARD, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Harrison

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 202 Cal.App.4th 340
**Rehearing Granted**

_____

**Opinion No.** S199830
**Date Filed:** October 31, 2013

_____

**Court:** Superior
**County:** San Bernardino
**Judge:** Katrina West

_____

**Counsel:**

Ronald R. Boyer, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R Gillette, Chief Assistant Attorney General, Gary W. Schons and Julie L. Garland, Assistant Attorneys General, Lilia E. Garcia, Steven T. Oetting and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Ronald R. Boyer
1563 Solano Ave., #246
Berkeley, CA  94707
(510) 524-8376

Quisteen S. Shum
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2613