Filed 5/18/16  P. v. Nieto CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESSICA NIETO,<br><br>    Defendant and Appellant. | D069518<br><br><br><br>(Super. Ct. No. SCN334950) |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Popkins, Judge.  Affirmed.

Elisabeth A. Bowman, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Jessica Nieto appeals after she pleaded guilty in count 1 to felony elder abuse (Pen. Code,[1] § 368, subd. (b)) and to the allegation that, in the

---

[1]    All further statutory references are to the Penal Code.

commission of this offense, she personally used a dangerous and deadly weapon (i.e., a knife) (§ 1192.7, subd. (c)(23)). Affirmed.

## OVERVIEW[2]

In July 2014, "deputies responded to a report of a stabbing at a home in Vista. When they arrived, they contacted the elderly victim, Martina Nieto. The back of her shirt was blood[-]stained and medics saw that she had two lacerations on her upper right back. She refused to answer the deputies' questions about who had stabbed her. She just said, 'I don't want her to go to jail.' . . .

"Deputies also contacted Martina Alejandro, the victim's daughter and defendant's sister, in the home. She told deputies she witnessed the incident. She explained she walked into the living room and saw the defendant stab [their] mother in the back. She said she did not know why the defendant stabbed [their] mother. She said the defendant then ran out of the home with the knife in her hand. She explained the defendant has severe mental health issues.

"The defendant was arrested nearby. She stated she threw the knife in some bushes near an apartment complex, but the deputies were unable to locate the knife. She refused to take the deputies to the location where she threw the knife, but she agreed to make a statement. She said she stabbed her mother because she believed her mother no longer loved her. . . ."

---

[2]    This overview is derived in part from the December 17, 2014 probation report.

Defendant was charged in count 1 with willful cruelty to an elder (§ 368, subd. (b)(1)) and in count 2 with assault with a deadly weapon (§ 245, subd. (a)(1)). Defendant was further charged in commission of counts 1 and 2 with the section 1192.7, subdivision (c)(23) enhancement, personal use of a dangerous and deadly weapon.

As noted, in November 2014 defendant pleaded guilty to count 1 and the section 1192.7, subdivision (c)(23) enhancement. In return, count 2 and the same enhancement attached to that count were dismissed. As part of the plea, defendant was sentenced to three years in state prison. In lieu of prison, the plea allowed defendant to serve her sentence in a long-term residential treatment facility.[3]

The record shows, in connection with the plea, the court asked defendant a series of questions *after* advising defendant that if she did not understand any of its terms to inform the court so that she could have "a chance to talk to [her] attorney." The record further shows that defendant confirmed she had initialed the boxes in the plea form; that before she placed her initials in each box, her attorney advised her of the terms of the plea; that in response to the court's inquiry whether she had any questions about the plea, defendant stated "No"; that she confirmed she had sufficient time to speak to counsel about the plea agreement; that she was satisfied with her legal representation; and that she understood the section 1192.7, subdivision (c)(23) enhancement would be a strike and

---

[3] The plea agreement further provided defendant's sentence for felony probation violation (case No. SCN295924) would be served concurrently with the three-year term imposed in the instant case.

would "result[] in mandatory denial of probation and substantially increased penalties in any future felony cases."

Finally, as required by statute (see § 1016.5, subd. (a)), the court warned defendant—and she confirmed she understood—that if she was "not [a] citizen[] of this country, a plea of guilty could have consequences of deportation, denial of naturalization, and exclusion of admission to the United States." In addition, the change of plea form signed by defendant under penalty of perjury also included the same warning. The record shows defendant placed her initials in the box confirming she understood the possible immigration consequences of pleading guilty. Per the plea agreement, the court in December 2014 imposed a three-year sentence, suspended, on condition defendant remain in long-term residential treatment for the term of her sentence.

The record shows defendant was first terminated from the long-term residential treatment facility in March 2015 for "failure to comply with treatment." Specifically, the termination letter provided defendant "not only displayed 'total disrespect to the program, others and staff,' but specifically violated program rules." It further provided defendant left the treatment facility without permission on February 16, March 11 and March 22, 2015, "each time returning the next day."

Defendant self-disclosed that on March 12, 2015, she had ingested methamphetamine. When directed to submit a urinalysis sample for testing, defendant used the wrong sample container, and, thus, no sample was provided. Defendant was arrested for probation violation and transferred to Las Colinas Detention and Reentry Facility.

4

The record further shows in August 2015, defendant was readmitted to the long-term residential treatment program. Although defendant's performance at the facility was again unsatisfactory, it was determined defendant would remain there pending a psychiatric appointment to adjust defendant's medications. In early September 2015, defendant was again terminated from the residential treatment program after her behavior showed little improvement, despite a medication adjustment, and after she again left the program without permission.

At the probation revocation hearing in mid-November 2015, the record shows that defendant admitted to violating probation; that before doing so, she confirmed to the court she had met with counsel and they had discussed her right to an evidentiary hearing; and that she expressly agreed to waive that right. The court in response found defendant made a "voluntary, knowing and intelligent waiver of her right to an evidentiary hearing." The court revoked probation and sentenced defendant to three years in prison, with credit for time served in local custody and in residential treatment.

Defendant timely appealed from the judgment. Pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), appointed counsel filed a five-page brief on behalf of defendant setting forth the facts of the case and requesting we review the entire record. In addition, pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), appointed counsel set forth the following possible, but not arguable, issue to assist us in conducting our *Wende* review: whether the court erred in failing to advise defendant "regarding the immigration consequences of her probation violation admission."

5

On our own motion, we gave defendant 30 days to file a supplemental brief on her own behalf. Defendant did not file a brief.

DISCUSSION

A. *Guiding Principles*

The *Anders* issue raised by appointed counsel requires us to examine section 1016.5, subdivision (a), which provides: "Prior to acceptance of a *plea of guilty or nolo contendere to any offense punishable as a crime* under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Italics added.)

Subdivision (b) of this statute provides a remedy for a trial court's failure to administer the mandated advisement: "If, after January 1, 1978, the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty." (§ 1016.5, subd. (b).)

Thus, in order to obtain relief under section 1016.5, subdivision (b), a defendant must demonstrate that (1) the court taking the plea failed to advise the defendant of the

6

immigration consequences as provided by section 1016.5; (2) as a consequence of defendant's conviction on the offense to which he or she pleaded guilty, there is more than a remote possibility that defendant faces one or more of the statutorily specified immigration consequences; and (3) defendant was prejudiced by the court's failure to provide complete advisements under subdivision (a) of section 1016.5. (See *People v. Totari* (2002) 28 Cal.4th 876, 884 [setting forth the three-part test above].)

"When engaging in statutory construction, '[w]e begin with the statutory language because it is generally the most reliable indication of legislative intent. [Citation.] If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1009.)' (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 211.)" (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1063, disapproved on another ground as stated in *People v. Harrison* (2013) 57 Cal.4th 1211, 1230, fn. 2.)

B. *Analysis*

Here, we independently conclude the plain language of section 1016.5 requires the advisement of immigration consequences to be given only before a criminal defendant enters a *plea of guilty or no contest to any offense punishable as a crime.* In contrast, a probation revocation proceeding is not a criminal proceeding to determine guilt or innocence, but rather is a proceeding to determine "whether conditions attached to an act of clemency have been met." (*People v. Dale* (1973) 36 Cal.App.3d 191, 195; see *Minnesota v. Murphy* (1984) 465 U.S. 420, 435, fn. 7.) Thus, by its very language,

7

section 1016.5 applies only to proceedings in which a defendant pleads guilty or no contest to a crime.

As summarized *ante*, the record clearly shows that the court properly advised defendant in November 2014 of the possible immigration consequences of pleading guilty to count 1 and the section 1192.7, subdivision (c)(23) enhancement; that defendant confirmed her counsel also had advised her of such consequences; and that defendant stated under penalty of perjury she was aware of such consequences, as she confirmed when she placed her initials in the box on the plea form showing she had reviewed and understood the terms of the plea.

The record shows after defendant was terminated from long-term residential treatment for a second time in September 2015, she did not simply plead guilty to an offense punishable as a crime, as contemplated by section 1016.5. Instead, she knowingly and voluntarily admitted during the probation revocation hearing to violating a condition of her probation, a finding we conclude is amply supported by the record, as summarized *ante*.

Finally, a review of the entire record pursuant to *Wende*, *supra*, 25 Cal.3d 436 has disclosed no other reasonably arguable appellate issues in connection with defendant's appeal.

DISPOSITION

The judgment of conviction is affirmed.


                                                    BENKE, Acting P. J.

WE CONCUR:


HALLER, J.


O'ROURKE, J.