Filed 10/20/14  P. v. Valencia CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B253431 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BA402808) |
| CLAUDIA VALENCIA, | |
| Defendant and Appellant. | |

THE COURT:[*]

Defendant Claudia Valencia appeals from her conviction by jury of attempted murder in violation of Penal Code sections 664 and 187, subdivision (a).[1]  The jury found that a principal personally and intentionally discharged a firearm causing great bodily injury to Mack Lewis within the meaning of section 12022.53, subdivisions (d) and (e)(1).  The jury further found that the offense was committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to

---

[*]     BOREN, P. J., ASHMANN-GERST, J., FERNS, J.†

†     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]     All further references to statutes are to the Penal Code unless stated otherwise.

promote, further, and assist in criminal conduct by gang members pursuant to section 186.22, subdivision (b)(1)(C).

Defendant admitted having suffered a 2011 conviction for robbery in violation of section 211 as a strike under sections 1170.12, subdivisions (a) through (d) and 667, subdivisions (b) through (i). After striking defendant's strike conviction, the trial court sentenced defendant to the low term of five years for the attempted murder and 25 years to life for the firearm enhancement. The court imposed a consecutive five years for defendant's prior conviction of a serious felony pursuant to section 667, subdivision (a)(1). The court did not impose sentence on the gang allegation. (§ 12022.53, subd. (e)(2).) Defendant's total sentence is 35 years to life. The court granted defendant 464 actual days of sentence credit and 70 days of conduct credits.

We appointed counsel to represent defendant on this appeal. After examination of the record, counsel filed an "Opening Brief" in which she stated she had failed to find any arguable issues. On June 25, 2014, we informed defendant that she had 30 days in which to file a supplemental brief containing any issues she wished this court to consider. On July 25, 2014, defendant filed a brief in which she argues that her state and federal constitutional rights were violated because: (1) her conviction for attempted murder is based on insufficient evidence; and (2) the trial judge erred in denying her motion to suppress the in-court eyewitness identification.

## FACTS

Defendant was tried along with codefendants Juan Villegas and Fernando Rosales for a shooting that occurred in the early morning hours of September 18, 2012. Before the shooting, Villegas and Rosales were in a red Ford Aerostar van in the area of Western Avenue and Florence Avenue near a Burger Palace restaurant. Rosales approached Jerrek Wooden and Kameyah Simms and offered Simms $20 for sexual favors. Simms handed the money to Wooden. After talking to Rosales, Simms left with Wooden and did not provide any services to Rosales. Villegas and Rosales began following Wooden and Simms. Eventually Wooden and Rosales engaged in a fistfight in which Wooden "split [Rosales's] face." Rosales was angry and got in the van driven by Villegas, and the

2

following continued.  Wooden and Simms ran away and climbed over a wall to the right of the Burger Palace and crossed an alley.**²**  They entered an abandoned building where victim Lewis was sleeping.

At approximately 3:25 a.m., Officer David Tello and his partner, Officer Ethan Sillers, were in their patrol car at the intersection of Western and Florence Avenues when they heard five or six gunshots.  Officer Tello drove in the direction of the shots and saw Lewis coming over the wall from the alley.  He was screaming and bleeding from multiple gunshot wounds.  Lewis ran toward the police car and collapsed.  Within 10 to 20 seconds, Officers Tello and Sillers both observed Villegas and defendant jump over the wall at about the same place where Lewis had come over.  The officers also saw Rosales start to climb over the wall, but he stopped and ran north in the alley after looking in the officers' direction.

Officer Tello noticed a red van parked nearby.  Villegas, holding a blue steel revolver, walked around the van to the driver's side.  The officers saw defendant go toward the passenger side.  She looked in the direction of the officers and stopped as if she did not know what to do.  Villegas got in the driver's seat of the van and drove away.  When the van left, defendant walked to a bus stop on Western Avenue.  Officer Tello approached her and called her over.  Defendant complied, and she was handcuffed and put in the patrol car.  After an air unit responded to the area, the van was spotted.  It eventually stopped and was surrounded by police units.  Villegas and Rosales were arrested.

Wooden testified that he and Simms were in the abandoned house for about 45 minutes when he heard a vehicle in the parking lot slam on its brakes.  He heard a door slide open, and he heard someone say "Where that Mayate at?" and "18th Street."  Wooden could hear people jumping into the alley.  Lewis got up and went to the door, and at that moment someone kicked it in.  Wooden and Simms heard someone say, "What's going on?" and "It's not me."  They then heard around six shots.   Wooden and

---

**²**      Wooden testified that another woman was with them at that point.

3

Simms hid while the intruders walked around the building. Wooden heard them leave and go in the alley, where the only way out was to jump the wall. He then heard a car speeding off. Wooden identified Villegas and Rosales in court. He was unable to identify defendant and did not see her on the night of the incident. Simms identified Villegas in court and in the field showup as the driver of the van. She identified Rosales in the field showup.

Lewis had used crack cocaine and marijuana during the evening before the shooting. While asleep in the abandoned building, he heard a loud crashing noise and woke to find someone standing over him. When Lewis stood up, he saw two more people. In court, Lewis said that one of them was defendant, and she was approximately 20 feet from him. He saw that the door and the side of the wall had been kicked in. When he saw guns waving at him, he said, "Whatever it is, I didn't do it." He was able to run around the people toward the opening. He ran to the wall and got over it, but he heard gunfire and knew he had been hit. At trial, Lewis identified Rosales and defendant as the ones with guns.

Lewis testified that as he lay wounded on the street, his head was facing the Burger Palace, and he saw people coming over the wall and running to a red minivan parked against the wall. Lewis saw the red van leave with no lights on. Lewis's memory was refreshed with his preliminary hearing testimony, where he had identified defendant in court. He testified at that hearing that, as he was lying on the ground, he saw defendant standing by the red minivan. At trial, he then recalled he saw defendant in the parking lot while he was on the ground. He recognized her as being one of the three people in the house when the guns were pointed at him.

Within two days of the shooting, Officer Medina showed Lewis some photographs. Lewis circled two photographs of males (Villegas and Rosales) because he recognized those two faces. He told Officer Medina he would not be able to identify the third person. He knew it was a female. Two months later, at the preliminary hearing, he identified defendant in court. Lewis testified at trial that he did not identify defendant

4

merely because she was the third defendant sitting at the table but rather because he actually recognized her. He remembered her face and her build when he saw her in court.

## DISCUSSION

### I. Sufficiency of the Evidence

Defendant contends the evidence is insufficient to prove she was a principal, aider and abettor, or coconspirator in this case.[3] According to defendant, the case boils down to a cross-racial identification under poor lighting conditions by a habitual drug user who had only a few seconds to identify three individuals while in a highly stressed state.

A single witness's testimony is sufficient to support a conviction, unless it is physically impossible or inherently improbable. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181; *People v. Scott* (1978) 21 Cal.3d 284, 296.) "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the [trier of fact] . . . to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 403.)

An "'aider and abettor is a person who, "acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime."' [Citation.]" (*People v. Jurado* (2006) 38 Cal.4th 72, 136.) Section 31 provides, in pertinent part: "All persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission," are principals.

One who knows another's unlawful purpose and intentionally aids, promotes, encourages, or instigates the crime is guilty as an aider and abettor of both the offense he

---

**3** The prosecutor proceeded under the theory that, even if defendant was not the shooter, she was guilty as an aider and abettor and/or coconspirator under the theory of natural and probable consequences.

or she intended to facilitate or encourage (the target crime) as well as any other crime committed by the person he or she aids and abets that is the natural and probable consequence of the target crime. (*People v. Prettyman* (1996) 14 Cal.4th 248, 259, 260-261.)

"A conspiracy is an agreement between two or more persons, with specific intent, to achieve an unlawful objective, coupled with an overt act by one of the conspirators to further the conspiracy." (*People v. Gann* (2011) 193 Cal.App.4th 994, 1005.) "[T]he conspiracy may be shown by circumstantial evidence and the agreement may be inferred from the conduct of the defendants mutually carrying out a common purpose in violation of a penal statute." (*Id.* at pp. 1005-1006.)

It is true that Lewis was a drug addict, who was caught in a highly stressful situation, and that events happened very quickly. At trial, he often did not recall his prior testimony when presented with transcripts, but Lewis was firm in stating that he immediately recognized defendant when he saw her in court. It is true that at the preliminary hearing Lewis said he could not tell if the suspect who held the gun was male or female, and that at trial he did not recall saying that. He denied that the reason he identified her was because he saw her in court with the other defendants. When counsel insisted on asking Lewis when he saw defendant for the first time, Lewis replied, "The night of the shooting." Lewis said he saw the faces of the three intruders as he was running out of the abandoned building. The bright lights from the Burger Palace were shining into the building. Lewis also saw defendant standing near the van after he collapsed on the ground. Lewis acknowledged that prior to seeing defendant in court, he believed he had not identified her to anyone in law enforcement and, to his recollection, he did not see any photographs of her. Officer Medina testified that, prior to showing Lewis a set of photographs (a flip-up) containing defendant's picture, Lewis told the officer he could not identify the third person. As a result, Officer Medina did not proceed.

In addition to Lewis's testimony and its impeachment on several points by defense counsel, the jury heard the testimony of Officers Tello and Sillers, who provided

6

corroboration of Lewis's identifications. Officers Tello and Sillers both saw defendant climbing over the wall with Villegas, who was carrying a firearm. They saw defendant move to the passenger's side of the van as Villegas went to the driver's side, but Villegas drove off. Officer Tello said he had no difficulty observing the faces of the three defendants he identified in court.

Finally, the jury heard that Rosales was an admitted member of the 18th Street criminal street gang, and defendant was known to Officer Espinosa, the gang expert, as an 18th Street gang member. Her clique was ongoing on the date of the shooting. The jury saw photos of defendant showing her tattoos and making gang signs. Officer Espinosa testified that the gang member at the scene who did not shoot was there to verify the act was actually carried out and by whom. Gangs require proof that a member put in work. Significantly, the address defendant gave police upon being arrested was within two miles of the shooting scene.

The discrepancies between Lewis's trial testimony, his preliminary hearing testimony, and his statements to police merely presented the jury with a credibility determination to resolve. As noted, the jury is the exclusive judge of the witnesses' credibility, and the jury here clearly believed Lewis as well as Officers Tello and Sillers. (*People v. Maury*, *supra*, 30 Cal.4th at p. 403.) The jury was fully instructed on the theories of aiding and abetting and natural and probable consequences in addition to conspiracy. The jury would have noted that Lewis was accurate in his identifications of Villegas and Rosales in the photo arrays he was shown. The jury was given standard guidelines in assessing the credibility of witnesses in CALJIC No. 2.20.[4] Although

---

[4]     CALJIC No. 2.20 was read to the jury as follows: "Every person who testifies under oath is a witness. You are the sole judges of the believability of a witness and the weight to be given the testimony of each witness. In determining the believability of a witness, you may consider anything that has a tendency reasonably to prove or disprove the truthfulness of the testimony of the witness, including, but not limited to, any of the following: The extent of the opportunity or ability of the witness to see or hear or otherwise become aware of any matter about which the witness testified; The ability of the witness to remember or to communicate any matter about which the witness has testified; The character and quality of that testimony; The demeanor and manner of the

defendant's counsel impugned Lewis's veracity and impartiality by, inter alia, contrasting his demeanor while being questioned by the prosecution with his questioning by defense counsel, the jury disagreed. To the extent defendant is arguing this court should reweigh the jury's credibility determination, it is clear that is not a proper function for this court. (*People v. White* (1995) 32 Cal.App.4th 638, 642, disapproved on another point in *People v. Harrison* (2013) 57 Cal.4th 1211, 1230.)

There was sufficient evidence for a reasonable jury to reach the conclusion that defendant conspired with and aided Villegas and Rosales with the goal of attacking Wooden (who was a Crips gang member) and Simms for taking the money and for "disrespecting" Rosales. In the process, Lewis was shot several times. Having concluded that substantial evidence supports defendant's conviction, we find without merit her argument that her state and federal constitutional rights were violated. (See *People v. Young*, *supra*, 34 Cal.4th at p. 1184.)

## II. Denial of Motion to Suppress

Defendant contends the trial court erred in denying her pretrial motion to suppress Lewis's in-court identification as the product of unduly suggestive law enforcement procedures. At Lewis's preliminary hearing, he admitted under cross-examination that he had been in court on two prior occasions and had seen the defendants' faces when they walked into court. He said he did not recall if he had identified a photograph of defendant, and he did not know if the first time he saw her was in the courtroom. At trial, Lewis acknowledged that he did not recall giving any descriptions to police officers of the perpetrators involved in the incident. He did not recall telling Officer Medina that he could not recognize the third person involved. He again admitted he was in the

witness while testifying; The existence or nonexistence of a bias, interest, or other motive; The existence or nonexistence of any fact testified to by the witness; The attitude of the witness towards this action or toward the giving of testimony; A statement previously made by the witness that is consistent or inconsistent with his or her testimony; The witness's prior conviction of a felony; Past criminal conduct of a witness amounting to a moral turpitude; in other words, a misdemeanor amounting to moral turpitude; Whether the witness is testifying under a grant of immunity."

courtroom twice when the preliminary hearing was continued. He saw the defendant being brought from the lockup. He said he had not identified defendant to anyone nor seen photographs of defendant before that time. Lewis vehemently denied, however, that the reason he identified defendant is because he saw her in court with the other defendants.

"[F]or a witness identification procedure to violate the due process clauses, the state must, at the threshold, improperly suggest something to the witness— i.e., it must, wittingly or unwittingly, initiate an unduly suggestive procedure." (*People v. Ochoa* (1998) 19 Cal.4th 353, 413.) "'A procedure is unfair which suggests in advance of identification by the witness the identity of the person suspected by the police.' [Citation.]" (*Ibid.*) In the instant case, there was no pretrial identification procedure. There was no photographic lineup or array, no field showup of defendant, and no live lineup. There is no evidence anyone pointed out defendant to Lewis at the prior court proceedings. There was no admission by Lewis that the fact he saw the three defendants come into court when his case was announced on two prior occasions helped him make the identification. (See, e.g., *People v. Sandoval* (1977) 70 Cal.App.3d 73, 85.)

Defendant's argument amounts to a complaint that Lewis was not asked to identify defendant before appearing in court with the defendants and, as a result, the in-court identification at the preliminary hearing when defendant appeared with her two codefendants was unduly suggestive. As stated in *People v. Rodrigues* (1994) 8 Cal.4th 1060, "[i]nsofar as defendant contends that an in-court identification not preceded by a lineup is impermissibly suggestive and prejudicial as a matter of law, he is wrong." (*Id.* at p. 1155; accord, *People v. Williams* (1997) 16 Cal.4th 153, 236.) "When an eyewitness has been subjected to undue suggestion, the factfinder must nonetheless be allowed to hear and evaluate his identification testimony unless the ""'totality of the circumstances'"" suggests "'a very substantial likelihood of irreparable misidentification."' [Citations.]" (*People v. Arias* (1996) 13 Cal.4th 92, 168.) "'Short of that point, such evidence is for the jury to weigh. . . . [E]vidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that

9

they cannot measure intelligently the weight of identification testimony that has some questionable feature.' [Citation]." (*Id*. at p. 170.)

We do not believe there was a likelihood of irreparable misidentification under the circumstances of this case. "[I]t has long been recognized that '[i]n the case of in-court identifications not preceded by a lineup . . . , the weaknesses, if any, are directly apparent at the trial itself and can be argued to the court and jury without the necessity of depending on an attempt to picture a past lineup by words alone.' [Citations.]" (*People v. Rodrigues*, *supra*, 8 Cal.4th at p. 1155.) Here, defense counsel thoroughly cross-examined Lewis about his statements to Officer Medina and his presence in the courtroom when defendant appeared from the lockup with the other two defendants, and counsel included these issues in his closing argument. The attorneys for Villegas and Rosales also grilled Lewis on his ability to see and his state of mind. Defendant's counsel argued that the case was "a credibility case," referring specifically to the credibility of Lewis as well as that of "other witnesses." He referred to "their ability to see, their ability to tell the truth, and their attitude towards this particular action." He characterized Lewis as a long-time cocaine addict and noted his criminal history. He criticized Lewis's demeanor, calling him "a pleaser" who tried to please the prosecution in this case. Counsel asserted that Lewis's identification of defendant was the "opposite of [] reliable." In addition, the jury instruction quoted in the previous section listed many of the adverse conditions defendant cites and provided guidance for the jury in assessing the reliability of Lewis's ability to identify defendant.

Given the thorough cross-examination to which Lewis was subjected by three defense attorneys and counsels' arguments to the jury, we believe the trial court did not err or violate defendant's state and federal constitutional rights by denying defendant's motion to exclude her in-court identification by Lewis.

In addition, we have examined the entire record, and we are satisfied that defendant's attorney has fully complied with his responsibilities and that no arguable issues exist. (*People v. Wende* (1979) 25 Cal.3d 436, 441.)

10

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.