Filed 9/20/24  P. v. Quaife CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TIFFANY JO QUAIFE,<br><br>    Defendant and Appellant. | F086999<br><br>(Super. Ct. No. FP004853A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Michael G. Bush, Judge.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and Warda Ali-Baloch, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Franson, Acting P. J., Peña, J. and Snauffer, J.

Defendant and appellant Tiffany Jo Quaife (appellant) appeals from an order following a jury trial extending her commitment as an offender with a mental health disorder (OMHD) for one year pursuant to Penal Code[1] section 2972, subdivision (c). Appellant contends there was insufficient evidence her mental illness presents a substantial danger of physical harm to others, the order should be reversed, and the matter remanded with directions to deny the petition for recommitment. We reject appellant's contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant assaulted an elderly victim with a knife on December 9, 2018. Appellant reportedly was trying to cut herself in a suicide attempt but cut the victim instead.

On December 11, 2018, the Kern County District Attorney filed a complaint alleging appellant committed assault with a deadly weapon (§ 245, subd. (a)(1); count I) and infliction of an injury on an elderly adult 65 years of age or older under circumstances or conditions likely to produce great bodily harm or death (§ 368, subd. (b)(1); count II). The complaint also alleged appellant personally used a deadly or dangerous weapon (§ 12022, subd. (b)(1)) as to count II, and personally inflicted great bodily injury on an adult 70 years of age or older (§ 12022.7, subd. (c)) as to both counts. The complaint further alleged appellant had two prior serious or violent felony convictions (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)): a 2008 conviction for assault with a deadly weapon (§ 245, subd. (a)(1)) and a 2015 conviction for arson (§ 451, subd. (d)).

On November 5, 2019, appellant pled guilty to count II (§ 368, subd. (b)(1)) and was sentenced to the middle term of six years. On January 19, 2021, appellant was committed to Patton State Hospital (Patton) as a mentally ill prisoner. (§ 2684.)

---

[1] Undesignated statutory references are to the Penal Code.

Appellant's commitment status was changed to an OMHD pursuant to section 2962 on October 13, 2021, with a maximum commitment date of October 13, 2023.

On July 14, 2023, the district attorney filed a petition pursuant to section 2970 to extend appellant's commitment by one year to end on October 13, 2024. Attached to the petition was an affidavit from Gillian Friedman, M.D., Patton's acting medical director, stating appellant suffered from a severe mental disorder that was not in remission or could not be kept in remission if appellant's treatment was not continued, and by reason of her severe mental disorder, appellant represented a substantial danger of physical harm to others. Appellant contested the petition and requested a jury trial. The petition was tried before a jury in October 2023.

At trial, the district attorney presented a single witness, Dr. Jason Rowden, the forensic psychologist at Patton, who evaluated appellant and prepared a report recommending she be recommitted. As part of his evaluation, Rowden reviewed appellant's medical records from Patton and her criminal history, and interviewed appellant several times. His last interview of appellant was approximately one hour on January 19, 2023.

Rowden opined that appellant had schizoaffective disorder (depressive type), a severe mental disorder. He further opined her mental disorder was not in remission based on the totality of symptoms observed by him and other clinicians. Appellant's condition required continued psychiatric and psychosocial treatment.

Rowden testified appellant had been confused in the past about why she was in the hospital but more recently, she had more of an understanding her hospitalization was related to her mental illness. She inaccurately believed her diagnosis was paranoid schizophrenia. Appellant reported she continued to hear voices, including hearing her clothes talking to her. Appellant had been taking her medications and told Rowden her medications " 'even out my personality and my brain.' " She was unable to name her medications and Rowden believed she had a very poor understanding of why she takes

3.

them. Appellant also had an understanding she could eventually get off the medications. Her engagement in treatment had previously been inconsistent, but she had been attending more group sessions in the last year.

Appellant harbored a delusion about plans to sell cookies and believed another person had stolen her cookie ideas and was selling them at Walmart. This was a recurring delusion documented in appellant's progress reports from Patton. In another recurring delusion, appellant believed other people could jump into her body. She reported others have caused her to get pimples or stolen her body parts.

Rowden opined that appellant's insight into her mental illness vacillates where sometimes she understood her delusions were a symptom and, other times, she believed the delusions were real. Appellant had a hard time understanding reality and had ongoing delusions of paranoia about what others were doing to her. In a December 2022 progress note, appellant reported that another patient came up behind her and "grabbed her butt," but she did not know whether this was a symptom of her mental disorder.

Rowden opined that appellant represents a substantial danger of physical harm to others due to her severe mental illness. This opinion was based on appellant's poor insight into her mental disorder, criminal history, lack of understanding about how she could become dangerous again, and lack of an adequate plan on how to manage her mental illness or history of substance abuse. Rowden testified the best predictor of future behavior is past behavior. Part of a violence risk assessment includes looking at a person's criminal history. Appellant's criminal history dated to 1999, when she was 15 years old, and included various offenses such as battery, battery on a police officer, assault with a deadly weapon, and arson. Other prior convictions were related to drug use. Rowden testified drug use typically exacerbates a mental disorder's symptoms and impacts medications' effectiveness. This can lead to further decompensation, intensifying symptoms, and violent behavior. When Rowden asked appellant about the underlying offense, appellant still believed the offense occurred because the victim's son jumped into

4.

her body and " 'made her do those things.' " Rowden was concerned about appellant engaging in similar behavior because she continued to have similar symptoms and still believed those delusions were true. The fact that appellant had not recently engaged in violent behavior while in the hospital did not change Rowden's opinion. Rowden opined that appellant's currently structured environment with medication management made it less likely a patient would act in violent ways.

After the prosecution rested, appellant moved for nonsuit based on the evidence presented not proving beyond a reasonable doubt that appellant continued to qualify for commitment. The trial court denied appellant's motion. Appellant did not present any evidence or testify at trial.

On October 11, 2023, the jury found appellant met the criteria for continued commitment. After the jury's verdict, the trial court denied appellant's request she be released for treatment on an outpatient basis (§ 2972, subd. (d)).

On October 12, 2023, the trial court ordered appellant recommitted for an additional year to commence on October 13, 2023 and end on October 13, 2024.

Appellant filed a timely notice of appeal.

## DISCUSSION

### I.    Relevant Legal Principles

Enacted in 1985, the Mentally Disordered Offender Act (§ 2960 et seq.) (the Act) "requires that an offender who has been convicted of a specified felony related to a severe mental disorder and who continues to pose a danger to society receive appropriate treatment until the disorder can be kept in remission." (*People v. Harrison* (2013) 57 Cal.4th 1211, 1218.) The Act's purpose "is to provide [a mentally disordered offender (MDO)] with treatment while at the same time protecting the general public from the danger to society posed by an offender with a mental disorder." (*In re Qawi* (2004) 32 Cal.4th 1, 9 (*Qawi*); § 2960.)

5.

"The … Act provides for treatment at three stages of commitment: as a condition of parole (§ 2962), in conjunction with the extension of parole (§ 2966, subd. (c)), and following release from parole (§§ 2970, 2972)." (*People v. Foster* (2019) 7 Cal.5th 1202, 1207.) "Sections 2970 and 2972 govern the third and final phase of MDO commitment, which begins once the offender's parole term has expired. Section 2970 permits a district attorney, on the recommendation of medical professionals, to petition to recommit an offender as an MDO for an additional one-year term. An offender will be recommitted if 'the court or jury finds [1] that the patient has a severe mental disorder, [2] that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and [3] that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others.' (§ 2972, subd. (c).)" (*Foster*, at p. 1208.)

Commitment proceedings are civil in nature, not criminal. (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1119.) An offender may request a jury trial to contest a petition for recommitment. (*Id*. at pp. 1122–1123; § 2972, subd. (a)(1).) The "state bears the burden of proving beyond a reasonable doubt that the person should be recommitted for another year." (*People v. Dunley* (2016) 247 Cal.App.4th 1438, 1448.)

"When reviewing a challenge to a civil commitment based on insufficient evidence, we consider the entire record in the light most favorable to the judgment to determine whether a reasonable trier of fact could have found beyond a reasonable doubt that the defendant met the requirements for the commitment." (*People v. Jenkins* (2023) 95 Cal.App.5th 142, 150.)

## II.    Analysis

Appellant does not specifically challenge the determination she has a severe mental disorder that "is not in remission or cannot be kept in remission without treatment" (§ 2972, subd. (c)). Appellant only challenges the finding that by reason of her severe mental disorder, she "represents a substantial danger of physical harm to

6.

others .…" (*Ibid*.)  Appellant contends there is insufficient evidence she poses a substantial danger of physical harm to others because she has not been violent since her commitment and is not a current danger to others.

While the term " 'substantial danger of physical harm to others' is without definition," "[i]n context, it appears to mean a prediction of future dangerousness by mental health professionals."  (*Qawi*, *supra*, 32 Cal.4th at p. 24.)  Courts have recognized that "[a] single psychiatric opinion that a person is dangerous because of a mental disorder constitutes substantial evidence to justify the extension of commitment." (*People v. Williams* (2015) 242 Cal.App.4th 861, 872.)

Substantial evidence supports the jury's finding appellant represents a substantial danger of physical harm to others.  Rowden testified appellant's insight into her mental disorder vacillates because sometimes she understood her delusions as a symptom of her disorder and other times, appellant believed the delusions were real.  He believed appellant did not understand how she could become dangerous again and did not have an adequate plan on how to manage her mental illness.  Appellant believed she could eventually get off her medications and harbored a delusion about selling cookies upon her release.  Appellant told Rowden she committed the underlying offense because the victim's son jumped into her body and made her " 'do those things.' "  Because appellant still believed her delusions that others can jump into her body, Rowden was concerned appellant could behave similarly in a less restricted setting.  Rowden was also concerned appellant's history of substance abuse indicated a risk of drug use following her release, which could impact the effectiveness of her medications and lead to decompensation, intensifying symptoms, and violent behavior.

Appellant likens her case to *Jenkins* to argue the recommitment order should be reversed.  The offender in *Jenkins* attacked her elderly landlord with a hammer in 1999 and was sentenced to 17 years in prison.  (*People v. Jenkins*, *supra*, 95 Cal.App.5th at pp. 145–146.)  The offender was committed as an MDO in 2014, and her commitment

was extended multiple times although she had not been violent for more than 20 years. (*Id*. at p. 146.) In reversing the 2022 recommitment order, the *Jenkins* court found there was not substantial evidence the offender represented a substantial danger of physical harm to others because there was no evidence she had been violent or physically aggressive since her 1999 commitment offense, she was 70 years old, her mental health had improved, and her physical health had deteriorated. (*Id*. at pp. 151–153.) *Jenkins* rightly acknowledged " '[s]uch a complete absence of violent or aggressive behavior of any kind over a long period of time is necessarily an important, objective factor that must not be ignored when determining [an MDO's] dangerousness.' " (*Id*. at p. 152.) Appellant claims her case is analogous to *Jenkins* because her underlying conviction was for injury to an elder and appellant has not been violent or threatened violence since her commitment offense. Despite these superficial similarities, *Jenkins* is readily distinguishable. Here, there was less than five years between appellant's 2018 offense and the recommitment proceeding in 2023. Appellant does not have decades of demonstrated nonviolence like the offender in *Jenkins* that would support a finding beyond a reasonable doubt she does not represent a substantial danger of physical harm to others. Furthermore, while the evidence showed the offender's mental health had improved in *Jenkins*, appellant continued to have the same delusion about others jumping into her body that contributed to the underlying offense.

Appellant's reliance on *People v. Johnson* (2020) 55 Cal.App.5th 96 and *People v. Redus* (2020) 54 Cal.App.5th 998 is similarly misplaced. *Johnson* reversed a commitment extension order where there was no evidence of violence by the 69-year-old schizophrenic offender for nearly 30 years, including approximately 11 years when he was conditionally released. (*Johnson*, at pp. 108–109.) In *Redus*, the 73-year-old offender "had not committed a violent act since his commitment offense some 45 years earlier." (*Redus*, at p. 1011.) The *Redus* court concluded that while the offender still had delusions and paranoia, the evidence was insufficient to show "the required link between

8.

[the offender's] ongoing mental illness and his purported difficulty in controlling his potentially dangerous behavior" under section 1026.5.[2] (*Redus*, at p. 1013.) Again, here, and in contrast to these cases, appellant did not have decades of nonviolent behavior and continued to harbor the same delusion that previously resulted in violence.

Appellant contends courts have held that recommitment is improper for mentally disabled offenders who have been free of violence. But in the case appellant relies on, the offender had "never engaged in behavior dangerous to others because of his mental disorder." (*People v. Cheatham* (2022) 82 Cal.App.5th 782, 790.) The same cannot be said of appellant, who cut the victim during the commitment offense because she believed the victim's son jumped inside her body and made her do so.

Appellant argues she has controlled her behavior notwithstanding ongoing delusions and has never been physically violent towards another patient or staff member during her commitment.[3] The lack of evidence showing recent violent conduct is immaterial because a finding of " 'substantial danger of physical harm' does not require proof of a recent overt act." (§ 2962, subd. (g); *Qawi*, *supra*, 32 Cal.4th at p. 24 ["a finding of recent dangerousness is not required"].) Rowden testified appellant's structured setting with staff trained to ensure she complied with her medication regimen made it less likely a patient would act out violently. Appellant's lack of violent behavior

---

[2]    Section 1026.5 provides the term of commitment for a defendant who has been found not guilty by reason of insanity pursuant to section 1026.

[3]    Appellant cites *People v. Williams* (1988) 198 Cal.App.3d 1476 and *Cramer v. Tyars* (1979) 23 Cal.3d 131 to argue courts have held that "present behavior is paramount in determining dangerousness." The analyses cited in both cases are inapposite because they involved commitment proceedings under different statutes. (*Williams*, at p. 1480 [defendant found not guilty by reason of insanity was required to show he was "no longer a danger to the health and safety of others, including himself" (§ 1062.2, subd. (e)) for conditional release]; *Tyars*, at p. 142 [the "pertinent issue" under Welfare and Institutions Code "section 6507 is the present 'condition or status' of the" developmentally disabled person].)

during commitment may simply have been the result of the hospital environment and staff ensuring she takes her medications. (See, e.g., *People v. Sumahit* (2005) 128 Cal.App.4th 347, 353 ["The fact that defendant has not misbehaved in a strictly controlled hospital environment does not prove he no longer suffers from a mental disorder that poses a danger to others."].)

We conclude substantial evidence supports the jury's finding beyond a reasonable doubt that appellant represents a substantial danger of physical harm to others.

## DISPOSITION

The order recommitting appellant is affirmed.

10.